UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY DANIALS WAREHAM,<br><br>            Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | No. CV- 13-374-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

      BEFORE THE COURT are cross-motions for summary judgment. ECF No. 15, 18. July 2, 2014, Plaintiff filed a reply. ECF No. 19. The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the parties' briefs, the court **grants** defendant's motion for summary judgment, **ECF No. 18**.

## JURISDICTION

      Wareham applied for supplemental security income (SSI) benefits and disability insurance benefits (DIB) on October 18, 2010, alleging onset beginning

ORDER - 1

June 30, 2010 (Tr. 161-66, 169-75). Benefits were denied initially and on reconsideration (Tr. 114-20, 121-25). ALJ Donna Shipps held a hearing June 27, 2012. Wareham and a vocational expert testified (Tr. 42-71). The ALJ issued an unfavorable decision July 26, 2012 (Tr. 21-35). The Appeals Council denied review September 11, 2013 (Tr. 1-5). The matter is now before the Court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review October 30, 2013. ECF No. 1, 5.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision and the parties' briefs. They are briefly summarized here and as necessary to explain the court's decision.

Wareham was 29 years old at onset and 31 at the hearing. He graduated from high school and may have attended college for one quarter or several semesters (December 6, 2010: attended some college) Tr. 264; (December 8, 2010: never attended college) Tr. 269, and Tr. 310: (May 2011: attended one quarter). Jobs have lasted from a few months to a couple of years (Tr. 310). He last worked in June 2010 as a caregiver, a job he held for six months. Wareham suffers back and right knee pain, as well as psychological limitations. He has difficulty standing more than an hour and walking more than two or three blocks. He is unable to sit for prolonged periods. Physical therapy and home exercises did not help. He forgot

mental health counseling appointments. Wareham testified he tried psychotropic medication for depression for "a couple of months, but I didn't feel like it was working, so I stopped taking it." He becomes nervous around large groups of people, and has problems with concentration and distractibility. Three days a week symptoms are severe enough that Wareham is unable to do anything around the house. He babysits his roommates' two children (Tr. 43-51, 53-55, 60-61, 333, 335).

## S<small>EQUENTIAL</small> EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

ORDER - 3

The Commissioner has established a five-step sequential evaluation process or determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. §404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and

final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v.*

*Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a

ORDER - 6

finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Shipps found Wareham was insured through September 12, 2012 (Tr. 21, 23). At step one, the ALJ found Wareham did not work at SGA levels after onset (Tr. 23). At steps two and three, she found Wareham suffers from back pain; knee pain; dysthymic disorder NOS; depressive disorder NOS; anxiety disorder NOS; attention deficit hyperactivity disorder (ADHD), NOS, inattentive type and personality disorder, impairments that are severe but do not meet or medically equal a listed impairment (Tr. 23, 25). The ALJ found Wareham less than fully credible (Tr. 28, 33). She found that Wareham is able to perform a range of medium work (Tr. 26-27). At step four, relying on a vocational expert's testimony, the ALJ found Wareham is able to perform past relevant work as a palletizer as he performed it (Tr. 33-34). Alternatively, at step five, again relying on the VE, the ALJ found Wareham can perform other jobs such as laundry worker, hand packager and kitchen helper/dishwasher (Tr. 34-35). The ALJ concluded Wareham was not disabled from onset through date of the decision (Tr. 35).

## ISSUES

Wareham alleges the ALJ erred when she weighed the medical evidence and at step five. He does not challenge the ALJ's credibility assessment. ECF No. 15 at

ORDER - 7

6; ECF No. 19 at 3-7. The Commissioner asks the court to affirm, alleging the ALJ's decision is supported by substantial evidence and the ALJ applied the correct legal standards. ECF No. 18 at 2.

## DISCUSSION

*A. Weighing evidence of psychological limitation*

First Wareham alleges the ALJ failed to credit several limitations assessed by examining psychologists Burdge, Duris and Genthe. ECF No. 15 at 9-14. The Commissioner responds that the ALJ properly weighed the evidence. ECF No. 18 at 8-15.

The Court discusses the cited psychologists' opinions in chronological order.

On December 8, 2010, five months after onset, Thomas Genthe, Ph.D., evaluated Wareham (Tr. 269-79; repeated at Tr. 282-92). Wareham describes problems with his back and knee, and learning disabilities. He took special education classes and graduated from high school. He never attended college. Wareham was going to temporary employment agencies since losing his job as a caregiver but they did not "have anything right now." Wareham had never received mental health treatment or taken prescribed psychotropic medication. He denies a significant history of cognitive problems, including distractibility and attentiveness. He reports no significant difficulty getting along with other people (Tr. 269-71). Testing showed intellectual functioning in the low average range, as

is the "ability to sustain attention, concentrate and exert mental control." Dr. Genthe opined Wareham should be limited to simple, repetitive tasks that do not require significant multitasking or cognitive flexibility. No social limitations were assessed (Tr. 273-74, 279).

The ALJ limited Wareham to simple, routine and predictable tasks that did not require multitasking (Tr. 66-67). The ALJ assessed *greater* limitations than Dr. Genthe because she included social limitations in the RFC not assessed by Genthe.

Mark Duris, Ph.D., evaluated Wareham February 16, 2011 and July 26, 2011 (Tr. 295-301, repeated at Tr. 303-09; 314-20).

At the first evaluation Dr. Duris opined the panic-like symptoms Wareham described sounded more like symptoms secondary to social phobia rather than panic disorder, and symptoms of agoraphobia. Wareham indicated these symptoms have often been accommodated on the job by being allowed to work alone. Dr. Duris diagnosed depressive disorder NOS, ADHD (NOS, inattentive type), social anxiety disorder (panic symptoms secondary) and agoraphobia without history of panic disorder. He assessed moderate (defined as significant) interference in work activities due to depression/anxiety and inattention. Specifically, Dr. Duris assessed moderate limitations in the ability to understand and follow complex instructions and learn new tasks. He assessed marked (defined as very significant) interference in the ability to communicate and perform effectively in a work setting

ORDER - 9

with public contact, and in one with limited public contact, and in the ability to maintain appropriate behavior. Dr. Duris opined medication is likely to restore or substantially improve Wareham's ability to work in a regular and predictable manner, and expected these limitations to last a maximum of six months. He notes Wareham was not currently receiving mental health services ((Tr. 24, 295, 297-99).

By the time of the next evaluation, in July 2011, as the ALJ points out, Dr. Duris assessed only mild limitations (Tr. 33, 318). [The ALJ mistakenly lists this evaluation date as January 25, 2012, but correctly cites to Exhibit 8F (Tr. 33). This appears to be a scrivener's error, as the date cited by the ALJ is the date of Dr. Burdge's evaluation, below.] The Commissioner accurately notes that the ALJ was not required to credit limitations Dr. Duris later found were no more than mild, nor earlier limitations not expected to last more than twelve months. ECF No. 18 at 9-10. In between Dr. Duris' two evaluations, on May 17, 2011 Wareham said he did not want psychotropic medication (Tr. 311).

On January 25, 2012, Aaron Burdge, Ph.D., evaluated Wareham (Tr. 333-43). Dr. Burdge noted Wareham had never taken psychotropic medication. He was involved in mental health services in the past but not currently. Wareham last worked about a year ago, as a caregiver for six months. He has been arrested eight times, for domestic violence and driving violations. Activities include babysitting,

using a computer daily to job search, email, and play games, driving around looking for jobs, walking the dog, attending church, and working on cars and computers.

Dr. Burdge assessed mild limitations in the ability to communicate and perform effectively in a work setting with limited public contact (Tr. 339). He opined memory was adequate, Wareham could follow short simple directions and was easily and often distracted (Tr. 333-38, 343). Dr. Burdge expected mental health counseling and medication to benefit Wareham, and opined limitations would last nine to twelve months (Tr. 339, 341).

Wareham alleges the ALJ erred by failing to include several of Dr. Burdge's assessed limitations. ECF No. 19 at 3.

He is incorrect.

The ALJ incorporated Dr. Burdge's assessed limitation in the ability to get along with co-workers by limiting Wareham to working in proximity to but not close cooperation with others. She incorporated limitations in the ability to respond appropriately to criticism from supervisors by limiting Wareham to superficial contact with supervisors. Dr. Burdge, like Dr. Genthe, opined the ability to sustain an ordinary routine was fair to good (Tr. 279, 338). Any limitation sustaining an ordinary routine was incorporated by limiting Wareham to simple instructions, work that is routine and predictable and involves no significant multi-tasking (Tr.

ORDER - 11

66-67). *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)(ALJ properly translates pace and mental limitations where the assessment is consistent with restrictions identified in the medical testimony). As noted, Dr. Burdge did not expect even these limitations to last longer than nine to twelve months with treatment (Tr. 339, 341).

The ALJ's assessment of the evidence is supported by the record as a whole, including the unchallenged credibility assessment. To aid in weighing the conflicting medical evidence, the ALJ evaluated Wareham's credibility. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ's reasons are clear and convincing.

Wareham does not challenge the ALJ's finding he is less than fully credible, making it a verity on appeal. *Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d

1155, 1161 (9th Cir. 2008) (failure to challenge in opening brief waives issue). The ALJ relied in part on self-reported daily activities inconsistent with reported limitations, apparent over-reporting severity of symptoms to Dr. Duris, actively seeking work and an unexplained treatment gap from August 2011 to January 2012. Moreover, no medical professional has opined Wareham is unable to work (Tr. 31-32; 54, 60, 270-71, 314, 335-36).

Daily activities inconsistent with claimed limitations, such as caring for young children, carrying firewood and job searching, a lack of supporting medical evidence and unexplained lack of consistent treatment are all properly considered. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The assessed RFC incorporates limitations supported by substantial evidence, as required. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ properly weighed the opinion evidence, credibility and the record as a whole in reaching this determination. It is supported by the evidence and free of harmful legal error.

*B. Evidence of physical limitations*

Next Wareham alleges the ALJ failed to properly credit unnamed treating sources who limited him to sedentary work with "very limited standing and walking, a maximum of 4 hours per day." ECF No. 15 at 14-15. The Commissioner responds that this allegation need not be addressed because it is a

ORDER - 13

1  "bare, undeveloped assertion." Wareham fails to cite to the record and does not

2  even name the purported treating source or sources. ECF No. 18 at 15.

3      The Commissioner is correct.

4      The court will not "consider matters on appeal that are not specifically and

5  distinctly argued in appellant's opening brief." *Miller v. Fairchild Indust., Inc.*, 797

6  F.2d 727, 738 (9th Cir. 1986). Applying this standard, the Court has refused to

7  address claims that were only "argue[d] in passing," *Brownfield*, 612 F.3d at 1149

8  n. 4, or that were "bare assertion [s] with no supporting argument," *Navajo Nation*

9  *v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n. 26 (9th Cir. 2008). "Judges are not like

10  pigs, hunting for truffles buried in briefs." *Greenwood v. FAA*, 28 F.3d 971, 977

11  (9th Cir. 1994) (citation omitted).

12      Even if the Court considers the allegation, however, it is meritless.

13  Presumably Wareham refers to the August 2011 RFC by Bob Ebel, PAC, limiting

14  standing to four hours a day and opining Wareham can perform sedentary work.

15  Mr. Ebel expected limitations to last six to twelve months (Tr. 329-32).

16      Less than two months after onset Wareham told Aaron Misiuk, ARNP, that

17  overall "he has been in very good health except for some mild obesity and poor

18  dental health." He does not mention problems with his back or knee. Wareham

19  plays a computer game, on average, eight to twelve hours a day, and at times

20  eighteen hours a day (Tr. 257). He expected to return to work at a temp agency

ORDER - 14

when they had jobs for him (Tr. 187).

Six months after onset, in December 2010, examining doctor Gary Gaffield, D.O., opined Wareham could walk or stand six out of eight hours. Sitting was unlimited. He could occasionally lift fifty pounds and twenty-five frequently. Wareham told Dr. Gaffield he can "probably stand two or three hours," contradicting an RFC limited to sedentary work. Interestingly, Wareham denied depression or anxiety (Tr. 264-68).

The ALJ notes allegations also exceed objective findings. An MRI dated March 20, 2012 shows mild disk disease at L1-2 and L2-3, with hypertrophic endplate changes at L1-2 anteriorly. There is no central or foraminal stenosis at any level (Tr. 344). Compared with an MRI taken in April 2011, the findings are unchanged (Tr. 346). *See also* Tr. 261-63 (2010 x-ray reports).

Wareham's activities of bringing in firewood, playing computer games, driving, socializing with friends and job searching, are consistent with Dr. Gaffield's assessed RFC (Tr. 264-68, 310).

The ALJ's reasons for discrediting more severe limitations are specific, legitimate and supported by substantial evidence. The ALJ may properly reject a physician's contradicted opinion that is inconsistent with the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citation omitted). Opinions premised on Plaintiff's subjective complaints and testing within Plaintiff's control

ORDER - 15

are properly given the same weight as Plaintiff's own credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Although Wareham alleges the ALJ should have weighed the evidence differently, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ assessed an RFC that is consistent with the record as a whole.

There was no harmful error.

*C. Step five*

Last, Wareham alleges the ALJ erred at step five. ECF No. 15 at 14-15. He alleges the hypothetical failed to completely and accurately include physical and mental limitations. ECF No. 15 at 14-15. This unhelpfully restates the allegation that the ALJ failed to properly weigh the evidence. The record fully supports the assessed RFC and hypothetical. Although Wareham alleges the ALJ should have weighed the evidence differently, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.

**IT IS ORDERED**:

ORDER - 16

1. Defendant's motion for summary judgment, **ECF No. 18**, is **granted.**

2. Plaintiff's motion for summary judgment, ECF No. 15, is denied.

The District Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant, and **CLOSE** the file.

DATED this 22nd day of July, 2014.

<div style="text-align:right">

*s/James P. Hutton*

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE

</div>

ORDER - 17